## ATTACHMENT D

## INDEPENDENT COMPLIANCE MONITOR

As set forth in the Plea Agreement (the "Agreement"), TD BANK, N.A. ("TDBNA") and TD BANK US HOLDING COMPANY ("TDBUSH") (together, the "Defendants") have agreed to retain an independent compliance monitor (the "Monitor"). The duties and authority of the Monitor and the obligation of the Defendants with respect to the Monitor and the United States Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section ("MLARS") and the United States Attorney's Office for the District of New Jersey ("USAO-DNJ") (together, the "Offices") are as described below.

1. The Defendants will retain the Monitor, in accordance with the procedure established in the Agreement, for a period of three years (the "Term of the Monitorship" or the "Term") unless the provision for extension described in Paragraph 7 of the Agreement is triggered.

*Monitor's Mandate*

2. The Monitor's primary responsibility is to assess and monitor the Defendants' compliance with the terms of the Agreement, including the adequacy of the Defendants' Bank Secrecy Act/anti-money laundering ("BSA/AML") compliance programs, other existing compliance programs, policies, procedures, codes of conduct, systems, and internal controls (the "Compliance Programs"), as described in Attachment C, to specifically remediate the deficiencies that resulted in the misconduct described in the Statement of Facts and to address and reduce the risk of any recurrence by the Defendants of such misconduct. During the Term of the Monitorship, the Monitor will evaluate, in the manner set forth below, the effectiveness of the Defendants' Compliance Programs, particularly as they relate to the Defendants' current and ongoing compliance with the BSA and related anti-money laundering laws and regulations and laws prohibiting money laundering and other forms of illicit finance. In so doing, the Monitor will take

such reasonable steps as, in their view, may be necessary to fulfill the foregoing mandate (the "Mandate"). This Mandate shall include an assessment of the Defendants' parents, Toronto-Dominion Bank ("TD Bank Group") and TD Group US Holdings LLC ("TDGUS"), and the Board of Directors' and senior management's commitments to, and effective oversight of the implementation of, the compliance commitments described in Attachment C of the Agreement.

*Defendants' Obligations*

3.  The Defendants shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in their view, may be necessary to be fully informed about the Defendants' Compliance Programs in accordance with the principles set forth herein and subject to applicable law, including applicable bank secrecy, data protection and labor laws and regulations. To that end, except as provided in Paragraphs 5 and 6 below, the Defendants, including any subsidiaries, parents, affiliates, or joint ventures, shall provide the Monitor with full access to all information, documents, records, facilities, and employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor, including information, documents, records, facilities, and employees outside the United States. Defendants shall use their best efforts to provide the Monitor with full access to the Defendants' former employees, agents, intermediaries, consultants, representatives, distributors, licensees, contractors, suppliers, and joint venture partners (collectively, "agents and business partners"), as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor. The Defendants shall inform, as necessary, agents and business partners of this obligation.

4.  Any disclosure by the Defendants to the Monitor concerning violations of the BSA and laws prohibiting money laundering and other forms of illicit finance shall not relieve the Defendants of any otherwise applicable obligation to truthfully disclose such matters to the Offices pursuant to the Agreement.

*Withholding Access*

5.    The Defendants and the Monitor agree that no attorney-client relationship shall form between the Defendants and the Monitor. In the event that the Defendants seek to withhold from the Monitor access to information, documents, records, facilities, employees, or agents and business partners of the Defendants pursuant to a potential claim of attorney-client privilege or the attorney work-product doctrine, or where the Defendants reasonably believe production would otherwise be inconsistent with applicable law, the Defendants shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

6.    If the matter cannot be resolved, at the request of the Monitor, the Defendants shall promptly provide written notice to both the Monitor and the Offices containing a general description of the nature of the information, documents, records, facilities, employees, or agents and business partners that are being withheld and the legal basis for such withholding. The Offices may then consider whether to make a further request for access to such information, documents, records, facilities, employees, or agents and business partners pursuant to the cooperation provisions set forth in Paragraph 10 of the Agreement.

*Monitor's Coordination with the Defendants and Review Methodology*

7.    In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor should coordinate with Defendants' personnel, including in-house counsel, compliance personnel, and internal auditors, on an ongoing basis. The Monitor may rely on the Defendants' internal resources (e.g., legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate with efficiency and Defendants'-specific expertise, and the products of the Defendants' processes, including the results of reviews, sampling and testing, audits, and analyses conducted by or on behalf of the Defendants, provided that the Monitor has confidence in the quality and reliability of those resources and products.

8. The Monitor should take a risk-based approach to conducting reviews, and thus, is not expected to conduct a comprehensive review of all business lines, all business activities, or all markets. In carrying out the Mandate, the Monitor should consider, for instance, risks presented by the following, among other, factors:

   a. The countries and business areas in which the Defendants operate or in which their customers are located;

   b. The size of the Defendants and the volume of their business;

   c. The nature and volume of the financial services provided the Defendants;

   d. The nature of the Defendants' customers, including the customers' stated lines of business, intended purpose for each account, and estimated cash and transaction volumes;

   e. The quality and quantity of compliance resources at the Defendants;

   f. The adequacy of employee resources, including employee compliance training, internal mechanisms for reporting misconduct or suspicious activity, and mechanisms for review of insider risk and deterrence of employee misconduct;

   g. The technological limitations of the respective procedures and systems at the Defendants;

   h. The automated or manual nature of the respective procedures and systems at the Defendants;

   i. The centralized or decentralized nature of the respective procedures and systems at the Defendants; and

   j. The Defendants' misconduct as described in the Statement of Facts, including their failure to maintain adequate Compliance Programs, and conduct appropriate employee training and risk monitoring.

9. In undertaking its reviews, the Monitor shall formulate conclusions based on, among other things:

   a. Inspection of relevant documents, including the Defendants' current compliance policies and procedures;

   b. Direct observation of selected procedures and systems at the Defendants, including those related to transaction monitoring, suspicious activity reporting, currency transaction reporting, compliance training, internal control testing, and internal audit functions;

   c. Meetings with, and interviews of, relevant current and, where appropriate, former shareholders, officers, employees, agents and business partners, and other persons at mutually convenient times and places; and

   d. Analyses, studies, and testing of the Compliance Programs.

*Monitor's Review Process and Written Work Plans*

10. To carry out the Mandate, the Monitor shall conduct a series of reviews, starting with a written work plan prior to start of the review and ending with a written report based on the review.

11. The Monitor's first task will be to prepare a written work plan for the first review. After consultation with the Defendants and the Offices and within sixty (60) calendar days of being retained, the Monitor shall submit to the Defendants and the Offices the first written work plan. The Defendants and the Offices shall provide comments on the first written work plan within thirty (30) calendar days after receipt. Any dispute between the Defendants and the Monitor with respect to any written work plan shall be settled by the Offices in their sole discretion.

12. The Monitor will conduct at least two follow-up reviews, as described in Paragraphs 18 through 23 below. The Monitor shall prepare and submit each follow-up written work plan to the Defendants and the Offices after consultation with the Defendants and the Offices

and at least thirty (30) calendar days prior to commencing the follow-up review. The Defendants and the Offices shall provide comments on each follow-up written work plan within twenty (20) calendar days after receipt. Any dispute between the Defendants and the Monitor with respect to any written work plan shall be settled by the Offices in their sole discretion.

13. All written work plans shall identify with reasonable specificity the activities the Monitor plans to undertake in its review pursuant to the Mandate, including a written request to the Defendants for documents. The Monitor's first written work plan shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the Mandate, including developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement. In developing such understanding, the Monitor is to rely, to the extent possible, on available information and documents provided by the Defendants. It is not intended that the Monitor will conduct their own inquiry or investigation into the historical events that gave rise to the Agreement.

*First Review & Written Report*

14. The first review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by the Defendants, the Monitor, and the Offices). The Monitor shall issue a first written report within one hundred fifty calendar (150) days of commencing the first review, setting forth the Monitor's assessment and, as applicable, making recommendations reasonably designed to improve the effectiveness of the Defendants' Compliance Programs as defined in Attachment C. The Monitor should consult with the Defendants concerning the Monitor's findings and recommendations on an ongoing basis and should consider the Defendants' comments and input to the extent the Monitor deems appropriate. The Monitor may also choose to share its draft written reports with the Defendants

before finalizing. The Monitor's written reports need not recite or describe comprehensively the Defendants' history or compliance policies, procedures, and practices. Rather, the reports should focus on areas the Monitor has identified as requiring improvement or which the Monitor otherwise concludes merit particular attention. The Monitor shall provide each report to the Defendants' governing authority and contemporaneously transmit copies to the following representatives of the Offices or their designees (including electronically, if requested by the Offices):

> Chief and Deputy Chief, Bank Integrity Unit
> Money Laundering and Asset Recovery Section, Criminal Division
> U.S. Department of Justice
> Bond Building, Tenth Floor
> 1400 New York Avenue, N.W.
> Washington, DC 20005
>
> U.S. Attorney and First Assistant U.S. Attorney
> United States Attorney's Office for the District of New Jersey
> 970 Broad Street
> Newark, NJ 07102

After consultation with the Defendants and with prior written approval of the Offices, the Monitor may extend the deadline for issuance of the first written report for a reasonable amount of time.

15. Within one hundred fifty (150) calendar days after receiving the Monitor's first report, the Defendants shall adopt and implement all recommendations in the report. If the Defendants consider any recommendations inconsistent with applicable law or regulation, impractical, excessively expensive, unduly burdensome, or otherwise inadvisable, they must notify the Monitor and the Offices of any such objections to recommendations in writing within sixty (60) calendar days of receiving the report. The Defendants shall include in such written notification a proposal to the Monitor and the Offices of an alternative policy, procedure, or system designed to achieve the same objective or purpose of the contested recommendation. The Defendants need

not adopt the contested recommendations within the allotted one hundred fifty (150) calendar days. As to any recommendation on which the Defendants and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within forty-five (45) calendar days after the Defendants serve the written notice. If agreement between the Defendants and the Monitor is reached, the Defendants shall adopt and implement the agreed-upon recommendation within ninety (90) calendar days after reaching such agreement.

16. In the event the Defendants and the Monitor are unable to agree on an acceptable alternative proposal within the forty-five (45) calendar days after the Defendants' notice, the Defendants and the Monitor shall promptly consult with the Offices. The Offices may consider the Monitor's recommendation and the Defendants' reasons for objecting to the recommendation in determining whether the Defendants has fully complied with their obligations under the Agreement. Pending a determination by the Offices, the Defendants shall not be required to implement any contested recommendations.

17. With respect to any recommendation that the Monitor determines cannot reasonably be implemented by the Defendants within one hundred fifty (150) calendar days after delivering the written report, the Monitor may extend the time for implementation with prior written approval of the Offices.

*Second Review & Written Report*

18. The Monitor shall commence the second review no later than one hundred eighty (180) calendar days after the issuance of the first written report (unless otherwise agreed by the Defendants, the Monitor, and the Offices). As outlined in Paragraph 12 above, the Monitor shall submit the second and subsequent written work plans at least thirty (30) calendar days prior to commencing the related follow-up review. The Monitor shall issue the second written report within one hundred twenty (120) calendar days of commencing review, setting forth the Monitor's

assessment and, as applicable, making recommendations following the procedures set forth in Paragraph 13 above. After consultation with the Defendants and with prior written approval of the Offices, the Monitor may extend the deadline for issuance of the second written report for a reasonable amount of time.

19. Within one hundred twenty (120) calendar days after receiving the Monitor's second report, the Defendants shall adopt and implement all recommendations in the report, unless, within thirty (30) calendar days after receiving the report, the Defendants notify the Monitor and the Offices in writing that the Defendants consider a recommendation inconsistent with applicable law or regulation, impractical, excessively expensive, unduly burdensome, or otherwise inadvisable. The Defendants shall include in such written notification a proposal to the Monitor and the Offices of an alternative policy, procedure, or system designed to achieve the same objective or purpose of the contested recommendation. The Defendants need not adopt a contested recommendation within the allotted one hundred twenty (120) calendar days. As to any recommendation on which the Defendants and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after the Defendants serve the written notice. If agreement between the Defendants and the Monitor is reached, the Defendants shall adopt and implement the agreed-upon recommendation within ninety (90) calendar days after reaching such agreement.

20. In the event the Defendants and the Monitor are unable to agree on an acceptable alternative proposal within the thirty (30) calendar days after the Defendants' notice, the Defendants and the Monitor shall promptly consult with the Offices. The Offices may consider the Monitor's recommendation and the Defendants' reasons for objecting to the recommendation in determining whether the Defendants have fully complied with their obligations under the

Agreement. Pending a determination by the Offices, the Defendants shall not be required to implement any contested recommendations.

21.     With respect to any recommendation that the Monitor determines cannot reasonably be implemented by the Defendants within one hundred twenty (120) calendar days after delivering the written report, the Monitor may extend the time for implementation with prior written approval of the Offices.

*Third Review & Written Report*

22.     The Monitor shall commence the third review no later than one hundred fifty (150) calendar days after the issuance of the second written report (unless otherwise agreed by the Defendants, the Monitor, and the Offices), with the third written work plan due at least thirty (30) calendar days prior to commencing the third review. The Monitor shall issue the third written report within one hundred twenty (120) calendar days of commencing review, and recommendations and any objections shall follow the same timelines and procedures set forth in Paragraphs 18 through 21 above. After consultation with the Defendants and with prior written approval of the Offices, the Monitor may extend the deadline for issuance of the third written report for a reasonable amount of time.

23.     Following the third review, the Monitor shall certify in a final review and report whether the Defendants' Compliance Programs, including their policies, procedures, codes of conduct, systems, and internal controls, are reasonably designed and implemented to prevent and detect violations of the BSA, laws prohibiting money laundering, and laws prohibiting other forms of illicit finance. A final review and report containing such certification shall be completed and delivered to the Offices no later than thirty (30) days before the end of the Term of the Monitorship. If, after the third review, the Monitor assesses that the Defendants' Compliance Programs are not reasonably designed and implemented to prevent and detect violations of the BSA, laws

prohibiting money laundering, and laws prohibiting other forms of illicit finance, the Offices may, in their sole discretion, declare a breach of the Agreement or an extension of the Term of the Monitorship in accordance with Paragraph 7 of the Agreement.

*Monitor's Discovery of Potential or Actual Misconduct*

24.  Except as set forth below in sub-paragraphs (b), (c) and (d),

    a.  Should the Monitor discover "Potential Misconduct" during their Term, which means a high likelihood that, post-dating or not disclosed in the Agreement or Statement of Facts:

        i.  An individual who has been convicted of a crime related to the conduct set forth in the Statement of Facts has participated, directly or indirectly, formally or informally, in the business of the Defendants, including managing, operating, or conducting Defendants' business;

        ii.  The Defendants or their personnel have selectively enforced know-your-customer and customer due diligence policies and procedures;

        iii.  The Defendants or their personnel have willfully failed to implement an effective anti-money laundering program;

        iv.  Specific violations of the BSA, laws prohibiting money laundering, or laws prohibiting other forms of illicit finance may have occurred or may be ongoing;

        v.  The Defendants or their personnel have knowingly permitted customer accounts to engage in unlawful activity, including conducting transactions with proceeds of unlawful activity;

        vi.  Defendants' personnel have knowingly accepted a monetary payment or other non-*de minimis* compensation from a TDBNA customer or

      third-party in return for a specified action or inaction;

  vii. The Defendants' technological controls to prevent circumvention of the Compliance Programs, described in Paragraph 7 of Attachment C, may be ineffective;

  viii. Real-time transaction and account monitoring may be ineffective;

  ix. The Defendants or their personnel may have maintained false books, records, or accounts; or

  x. The Defendants or their personnel have intentionally withheld relevant information from law enforcement or regulators,

the Monitor shall immediately report the Potential Misconduct to the Defendants' BSA Officer for further action unless the Potential Misconduct was already so disclosed. The Monitor will also immediately report Potential Misconduct to the Offices.

  b. In some instances, the Monitor should immediately report Potential Misconduct to the Offices without reporting the Potential Misconduct to the Defendants. The presence of any of the following factors militates in favor of reporting Potential Misconduct to the Offices without reporting the Potential Misconduct to the Defendants, namely, where—in the Monitor's good faith assessment—the Potential Misconduct: (1) poses a risk to U.S. national security, public health or safety, or the environment; (2) involves senior management of the Defendants; (3) involves obstruction of justice or obstruction of a bank regulator; or (4) otherwise poses a substantial risk of harm.

  25. The Monitor shall address in their reports the appropriateness of the Defendants' response to the Potential Misconduct. Further, if the Defendants or any entity or person working directly or indirectly for or on behalf of the Defendants withholds information necessary for the

performance of the Monitor's responsibilities and the Monitor believes that such withholding is without just cause, the Monitor shall immediately disclose that fact to the Offices and address the Defendants' failure to disclose the necessary information in their next written report.

26. Neither the Defendants, nor anyone acting on their behalf, shall take any action to retaliate against the Monitor for any such disclosures or for any other reason.

*Meetings During Pendency of Monitorship*

27. The Monitor shall meet with the Offices within thirty (30) calendar days after providing each written report to the Offices to discuss the report, to be followed by a meeting among the Offices, the Monitor, and the Defendants.

28. At least annually, and more frequently if the Offices deem it appropriate, representatives from the Defendants and the Offices will meet to discuss the Monitor and any suggestions, comments, or improvements the Defendants may wish to discuss with or propose to the Offices, including with respect to the scope or costs of the Monitor.

*Contemplated Confidentiality of Monitor's Reports*

29. The reports will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, impede pending or potential government investigations, and undermine the objectives of the Monitorship. For these reasons, among others, the Monitor's written reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the Defendants and the Monitor in writing, or except to the extent the Offices determine in their sole discretion that disclosure would be in furtherance of the Offices' discharge of their respective duties and responsibilities or otherwise required by law.